825 A.2d 554 (2003)
361 N.J. Super. 312
Kelly LEVEY, Plaintiff-Appellant,
v.
YAMAHA MOTOR CORPORATION, U.S.A., Defendant-Respondent,
and
Stumpy's Sales & Service, Inc., Evelyn Stumpf, and Keith Barrett, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 2003.
Decided June 24, 2003.
*556 Jay L. Hundertmark, Northfield, argued the cause for appellant (James R. Ozol, attorney; Mr. Hundertmark, of counsel and on the brief).
Robert J. Kelly, Newark, argued the cause for respondent (Wilson, Elser, Moskowitz, Edelman & Dicker, attorneys; Mr. Kelly, of counsel; Suna Lee, on the brief).
Before Judges SKILLMAN, CUFF and WINKELSTEIN.
*555 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether a trier of fact may find that a product seller vitiated the effectiveness of the printed instructions and warnings accompanying its product by providing a demonstration of the product to intended users in which the seller violated its own safety warnings. We conclude that a determination of the adequacy of a seller's instructions and warnings requires consideration of all the seller's communications to intended users, including demonstrations of the product, and therefore a product demonstration that violates a seller's safety warnings may be found to have undermined the effectiveness of those warnings.
Defendant Yamaha Motor Corporation, U.S.A. (Yamaha) distributes a jet boat called the "Exciter 270." Defendant Stumpy's Sales & Service, Inc. (Stumpy's) is a retail dealer of Yamaha products with premises in Neptune.
The owners manual given to purchasers of the Exciter jet boat includes various warnings concerning the product's use. One warning states: "Do not operate the boat in rough water ...; this may lead to an accident causing injury or death." Another warning states: "Do not go over a water-ski jump, or attempt any other kind of jumping maneuver with the boat, since you risk injuring yourself or damaging your Jet Boat." There also are warning labels affixed to the boat, one of which states: "Never attempt jumps with this boat."
To promote sales of its jet boat, Yamaha established a demonstration program under which "demos" were sold to its dealers under favorable terms for use in showing the product to prospective customers. At the outset of this program, the Yamaha district sales representative, Gerald L. Solensky, Jr., came to Stumpy's in June 1997 to show its salesmen how to operate the boat. During his presentation, Solensky reviewed the benefits of the product, including "safety features," with Stumpy's salesmen and took them for a ride. Solensky drove the boat for part of the ride and then turned the controls over to John Wehrle, Stumpy's sales manager. The ride started in the river adjoining Stumpy's premises, where the water was fairly *557 calm, but after a while, Wehrle drove the boat out an inlet into the ocean. At this point, the boat was driven over ocean waves and jumped at least partially out of the water.
During Solensky's presentation, one of the Stumpy's salesmen in the boat was Keith Barrett. According to Barrett, the ocean was "extremely rough" that day, with approximately three-foot high waves where the boat was being operated. In a deposition, Barrett testified that Solensky "encouraged [Wehrle] to go out into the ocean and they were actually trying to tip [the] boat and jump it."
On March 28, 1998, Barrett gave a demonstration ride of the Yamaha jet boat to plaintiff and her boyfriend. This was apparently the first time Barrett had shown the boat to a customer after Solensky's demonstration ride. According to Barrett, he followed substantially the same route in his demonstration that Solensky had taken in his demonstration to Stumpy's salesmen, first riding on the smooth water of the river and then entering the ocean surf. Barrett claims that the ocean was calmer when he made his demonstration to plaintiff than during his ride with Solensky and that he did not drive the boat as fast as Wehrle had driven it. However, plaintiff claims Barrett made a conscious effort to cause the boat to go airborne and it "actually came out of the water." Plaintiff alleges she was bounced out of her seat when Barrett drove the boat over a wave, as a result of which she suffered personal injuries.
Plaintiff subsequently brought this personal injury action against Yamaha, Barrett, Stumpy's and Evelyn Stumpf, a principal of Stumpy's. After completion of discovery, Yamaha moved for summary judgment on the ground that its owners manual and the labels on the boat contained adequate warnings concerning the dangers posed by unsafe use and that the sole cause of the accident was Barrett's "jumping" the boat in "rough waters," contrary to those warnings. The trial court granted Yamaha summary judgment, stating that any improper demonstration by Solensky of the use of the jet boat did not "absolve" Barrett and Stumpy's from responsibility for "any deviation from basic safety precautions which clearly they had an obligation to adhere to." Plaintiff settled her claims against Stumpy's and its employees and then filed this appeal from the summary judgment in favor of Yamaha.
A claim that a product seller has failed to provide adequate warnings concerning the dangers posed by the product's use is now governed by the Products Liability Act, N.J.S.A. 2A:58C-1 to -7. N.J.S.A. 2A:58C-2(b) subjects a product seller to liability for a product which "fail[s] to contain adequate warnings or instructions." N.J.S.A. 2A:58C-4 provides that "[a]n adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used...." This statutory standard for determining the adequacy of a product safety warning is essentially a codification of the common law standard. See Grier v. Cochran W. Corp., 308 N.J.Super. 308, 317, 705 A.2d 1262 (App.Div.1998). The Product Liability Act governs "any claim or action ... for harm caused by a product, irrespective of the theory underlying the claim, except actions for ... breach of an express warranty." N.J.S.A. 2A:58C-1(b)(3); see Tirrell v. Navistar Int'l, Inc., 248 N.J.Super. *558 390, 398, 591 A.2d 643 (App.Div.), certif. denied, 126 N.J. 390, 599 A.2d 166 (1991).
"[A]n adequate warning is one that includes the directions, communications, and information essential to make the use of a product safe." Freund v. Cellofilm Props., Inc., 87 N.J. 229, 243, 432 A.2d 925 (1981). In some circumstances, a safety warning in an owners manual or other printed materials accompanying a product does not constitute an adequate warning; the seller also may be required to place safety warnings directly on the product. Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 403, 451 A.2d 179 (1982). In fact, pictorial symbols, rather than simply words, may be required to adequately convey safety warnings to some anticipated users. See Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 208, 485 A.2d 305 (1984). Consequently, a trier of fact must consider all communications from a seller to anticipated users of a product in determining whether the seller has discharged its duties as a "reasonably prudent [product seller]." N.J.S.A. 2A:58C-4. "Questions of reasonableness in determining the adequacy of warnings are ordinarily for the jury to resolve." Grier, supra, 308 N.J.Super. at 317, 705 A.2d 1262.
Although a retailer is not ordinarily an intended user of the products it sells, Yamaha clearly intended Stumpy's employees to use the demo jet boat. In fact, the purpose of Yamaha's demonstration program was to promote sales of the jet boat by having its dealers' salesmen demonstrate the boat's operation to prospective customers. Therefore, those employees were intended users of the boat, to whom Yamaha owed a duty to provide adequate warnings concerning its safe use. If Barrett or another one of those intended users failed to operate the boat properly because Yamaha provided inadequate warnings concerning its safe use, Yamaha may be held liable to a third party such as plaintiff who suffers injuries as a result of a user's negligent operation of the boat. See Tirrell, supra, 248 N.J.Super. at 402-03, 591 A.2d 643.
Yamaha's communications to Stumpy's and its employees concerning the use of the demo jet boat were not limited to the printed instructions and warnings accompanying the product. Instead, Yamaha sent its regional sales representative, Solensky, to show Stumpy's employees how to operate the boat. Moreover, according to Barrett, Solensky encouraged Wehrle in the presence of Barrett and the other Stumpy's salesmen to operate the boat in a manner that violated Yamaha's printed safety warnings.
As recognized by a leading products liability treatise, "[w]hat might otherwise be an adequate warning can be undermined and made ineffective by counteracting representations." 1 Jerry J. Phillips & Robert E. Pryor, Products Liability § 6.07 at 6-45 (rev.2002). Moreover, such "[c]ounteracting representations are not limited to words." Ibid.; see also M. Stewart Madden, The Enduring Paradox of Products Liability Law Relating to Prescription Pharmaceuticals, 21 Pace L.Rev. 313, 330 (2001) ("An otherwise suitable warning may be vitiated by the conduct of the manufacturer or those acting at the direction of the manufacturer if they promote the product in such a fashion as to obscure or lessen the cautionary impact of the seller's warnings."); cf. Baldino v. Castagna, 505 Pa. 239, 478 A.2d 807, 810 (1984) ("[A] drug manufacturer can be held to have breached his duty of reasonable care by promoting its product in such a way as to nullify printed warnings.").
*559 In this case, a reasonable trier of fact could find that Solensky's live demonstration of the use of the jet boat constituted a "counteracting representation" that undermined the effectiveness of the printed warnings accompanying the product. By encouraging Wehrle to drive the boat into the rough water of the ocean and jump waves, Solensky may have conveyed the impression to Barrett and the other Stumpy's salesmen that Yamaha did not consider this method of operation of the "Exciter" jet boat to be as dangerous as its printed warnings indicated and that such a method of operation could be used to promote sales. We also believe that a reasonable trier of fact could find that Solensky's presentation was a proximate cause of Barrett's alleged unsafe demonstration of the jet boat to plaintiff and therefore that Yamaha should be held jointly liable with Stumpy's for plaintiff's injuries.
Accordingly, we reverse the summary judgment in Yamaha's favor and remand the case for trial.