935 A.2d 787 (2007)
396 N.J. Super. 517
Michael KORUBA, Plaintiff-Appellant/Cross-Respondent,
v.
AMERICAN HONDA MOTOR CO., INC., Defendant-Respondent/Cross-Appellant, and
Cycle World of Cherry Hill, L.L.C., Defendant-Respondent, and
Mark J. Horn and Mark Horn Masonry, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued Telephonically October 25, 2007.
Decided November 19, 2007.
*788 Edward Slaughter, Princeton, argued the cause for appellant/cross-respondent *789 Michael Koruba (Pellettieri, Rabstein and Altman, attorneys for appellant; Mr. Slaughter, of counsel and on the briefs).
Mitchell S. Berman, argued the cause for respondent Cycle World of Cherry Hill, L.L.C. (Mr. Berman, of counsel and on the brief).
Robert M. Goodman, Woodbridge, argued the cause for respondent/cross-appellant American Honda Motor Co., Inc. (Greenbaum, Rowe, Smith & Davis, LLP, attorneys; Mr. Goodman, of counsel; C. Brian Kornbrek and Adam B. Kaplan, on the briefs).
Before Judges PARRILLO, GRAVES and ALVAREZ.
The opinion of the court was delivered by
PARRILLO, J.A.D.
This case arises out of an accident that occurred when plaintiff Michael Koruba attempted an extreme jump on his sports all-terrain vehicle (ATV), resulting in his sustaining serious neurological and orthopedic injuries. Plaintiff sued both the manufacturer of the ATV, defendant American Honda Motor Co., Inc. (Honda), asserting a product liability claim for failure to adequately warn, and the dealership where he purchased it, defendant Cycle World of Cherry Hill, L.L.C. (Cycle World), asserting a negligence claim.[1] His claims against both defendants were dismissed on summary judgment motions and plaintiff appeals. Defendant Honda cross appeals from that portion of the summary judgment finding plaintiff's expert qualified to render an opinion on the warning issue. We affirm for the following reasons.
The material facts are not in dispute. On January 15, 2001, plaintiff purchased a four-wheel 2001 TRX 400 EX Honda ATV from Cycle World, a retail dealer of Honda products with premises in Cherry Hill. An experienced ATV user, aiming to be a "professional rider," plaintiff personally selected this particular ATV model, designed and manufactured by Honda. The salesman with whom he dealt, Timothy Yowe, knew plaintiff and was aware that he had ridden ATVs since he was young. Prior to purchase, plaintiff was introduced to Anthony DeMarco, Cycle World's finance and insurance manager, who personally reviewed with plaintiff each item on the "Salesperson Delivery Checklist-TRX" (checklist), including the following:
 ALWAYS read the owner's manual carefully and follow the operating procedures described. Pay special attention to the warnings contained in the manual and on all labels.
 NEVER operate an ATV without proper instruction. Take a training course.
. . . .
 NEVER operate an ATV at excessive speeds. Go at a speed which is proper for the terrain, visibility conditions, and your experience.
 NEVER attempt to do wheelies, jumps or other stunts.
DeMarco read these warnings aloud to plaintiff, including the admonitions never operate the ATV at excessive speeds, and never "attempt to do wheelies, jumps or other stunts." (emphasis added). Plaintiff then had the opportunity to read the warnings himself before initialing and signing the document. By doing so, plaintiff acknowledged that he had received these *790 warnings in writing and that they "have been reviewed with me and explained to my satisfaction." Plaintiff was also provided information at the dealership about the ATV Safety Institute, including a toll-free number to find the nearest training location.
In addition to the checklist, DeMarco also provided plaintiff with the owner's manual and a "Tips and Practice Guide for the ATV Rider," which he was instructed to read. The owner's manual included various warnings concerning the ATV's operation and use. Specifically, the owner's manual warned:
Never attempt wheelies, jumps, or other stunts.
. . . .
When riding, you should keep all four wheels of your [ATV] on the ground. Avoid "wheelies," jumps and other stunts, as they could cause loss of control.
. . . .
POTENTIAL HAZARD[:] Attempting wheelies, jumps, and other stunts. . . . Never attempt stunts, such as wheelies or jumps. Don't try to show off.
[(emphasis added).]
The manual also warned that serious injury or death could result from failing to follow the operating procedures and precautions detailed therein. There are also warning labels affixed to the ATV, although none reiterated the admonition not to attempt jumps.
In fact, Honda's on-product warning label on the 2001 TRX 400 EX was based in part on an independent study conducted by Miller Engineering, Inc., using epidemiological data on the effectiveness of warning labels and the risks associated with operating an ATV. Honda's on-product warning label was approved by the Consumer Product Safety Commission (CPSC).
In any event, plaintiff did not read the owner's manual before his accident, and even if he had, he would have ignored the "no jumping" warning, as he did on April 29, 2001. Attempting a jump over a rather large sand pile in a sand and gravel pit in Tabernacle, New Jersey, plaintiff went airborne for about sixty-two feet, lost control in mid-air, and crashed his ATV nose-first 108 feet from the take-off point. He himself was ejected and landed eighty-one feet from where he first left the ground, sustaining severe brain injury.
Plaintiff subsequently brought this personal injury action against Honda and Cycle World. After completion of discovery, defendants moved for summary judgment on the ground that their verbal and written warnings adequately informed of the dangers posed by unsafe use and that the sole cause of the accident was plaintiff's "jumping" the ATV, contrary to those warnings. The trial court granted Cycle World summary judgment, reasoning that there is no cognizable action in negligence because plaintiff's exclusive remedy for a personal injury claim arising out of product use is under the Product Liability Act, N.J.S.A. 2A:58C-1 to -11. The judge deferred ruling on Honda's motion pending a N.J.R.E. 104 hearing, pursuant to Kemp ex rel. Wright v. State, 174 N.J. 412, 809 A.2d 77 (2002),[2] on plaintiff's expert's qualifications and the basis for his opinion that Honda's product warnings were inadequate. At the conclusion of that hearing, the judge found the proffered expert opinion *791 to be a net opinion, lacking sufficient foundation, and therefore granted Honda summary judgment as well.
On appeal, plaintiff argues there was competent proof from which a reasonable trier of fact could find that Honda's warnings were inadequate because they were not affixed to the product, because they were otherwise diluted, if not vitiated, by general depictions in the media of ATVs being jumped, and because they did not provide instructions on how to safely jump an ATV. Plaintiff also argues that the court erred in disallowing his negligence claim against Cycle World. We disagree with these contentions.

(i)
A claim that a product manufacturer or seller has failed to provide adequate warnings concerning the dangers posed by the product's use is governed by the Product Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11. N.J.S.A. 2A:58C-2(b) subjects a product manufacturer or seller to liability for a product which "fail[s] to contain adequate warnings or instructions." N.J.S.A. 2A:58C-4, which essentially codifies the common law standard, Grier v. Cochran W. Corp., 308 N.J.Super. 308, 317, 705 A.2d 1262 (App.Div.1998), provides that
[a]n adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used
. . . .
"[A]n adequate warning is one that includes the directions, communications, and information essential to make the use of a product safe." Freund v. Cellofilm Props., Inc., 87 N.J. 229, 243, 432 A.2d 925 (1981). Although the Act does not require that warnings be put in a particular place, Grier, supra, 308 N.J.Super. at 317, 705 A.2d 1262; see also Repola v. Morbark Indus., Inc., 934 F.2d 483, 491 (3d Cir.1991), in some circumstances, admittedly, the manufacturer's duty to warn may dictate placing safety warnings directly on the product itself. Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 403, 451 A.2d 179 (1982); Levey v. Yamaha Motor Corp., U.S.A., 361 N.J.Super. 312, 318, 825 A.2d 554 (App.Div.2003). And in certain situations, such as where the product is likely to be used by unskilled industrial workers illiterate in English, pictorial symbols may be required to adequately convey safety warnings. See Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 208, 485 A.2d 305 (1984); see also Hubbard-Hall Chem. Co. v. Silverman, 340 F.2d 402, 405 (1st Cir.1965). In essence, the adequacy of a warning is to be considered in the context of all communications by the product manufacturer or seller to the anticipated users of the product. Levey, supra, 361 N.J.Super. at 318, 825 A.2d 554.
Here, the sole proof of inadequacy was the proffered opinion of plaintiff's expert, E. Patrick McGuire, that because of the magnitude and severity of the risk involved, the "no jumping" warning should have been emphasized by placement directly on the ATV itself. The motion judge, however, found this opinion was not supported by any facts or statistical data related to accidents and injuries caused by jumping ATVs:
I do find it significant that there is nothing in his report that tells me what he assumes to be a statistically [significant] number of injuries and deaths by jumping, from which then spawns the *792 . . . conclusion that he makes that [defendant] should put no jumping on the product, as opposed to in the [instruction manual].
. . . .
I think a net opinion is a net opinion if somebody assumes a significant component to the opinion.
And a significant component to the opinion is the statistical significance of deaths by jumpingor significant injury by jumping. And he assumes that to be a statistically significant cohort without any facts whatsoever or even anyI didn't hear him say anythinghis response kind of struck me as, well I assume . . . that it's statistically significant and . . . I just think that's the fatal flaw.
[(emphasis added).]
We agree.
The net opinion rule has been succinctly defined as "a prohibition against speculative testimony." Grzanka v. Pfeifer, 301 N.J.Super. 563, 580, 694 A.2d 295 (App.Div.), certif. denied, 154 N.J. 607, 713 A.2d 498 (1997); see also Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J.Super. 289, 300, 573 A.2d 196 (App.Div.), certif. denied, 122 N.J. 333, 585 A.2d 349 (1990). An expert is required to give the "why and wherefore" of his opinion, not just a mere conclusion. Jimenez v. GNOC, Corp., 286 N.J.Super. 533, 540, 670 A.2d 24 (App.Div.), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996); Myrlak v. Port Auth. of N.Y. and N.J., 302 N.J.Super. 1, 9, 694 A.2d 575 (App.Div.1997), aff'd in part, rev'd in part, on other grounds, 157 N.J. 84, 723 A.2d 45 (1999). When an expert opinion "`is based merely on unfounded speculation and [unqualified] possibilities,'" Grzanka, supra, 301 N.J.Super. at 580, 694 A.2d 295 (quoting Vuocolo, supra, 240 N.J.Super. at 300, 573 A.2d 196), or is unsupported by factual evidence, it is inadmissible. Jimenez, supra, 286 N.J.Super. at 540, 670 A.2d 24; Dawson v. Bunker Hill Plaza Assocs., 289 N.J.Super. 309, 323-24, 673 A.2d 847 (App. Div.), certif. denied, 146 N.J. 569, 683 A.2d 1164 (1996). "[T]he failure of the expert to explain a causal connection between the act or incident complained of and the injury or damage allegedly resulting therefrom[,]" renders the expert's opinion an inadmissible net opinion. Buckelew v. Grossbard, 87 N.J. 512, 524, 435 A.2d 1150 (1981). Consequently, "experts generally . . . must be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are scientifically reliable." Landrigan v. Celotex Corp., 127 N.J. 404, 417, 605 A.2d 1079 (1992); see also Molino v. B.F. Goodrich Co., 261 N.J.Super. 85, 98-99, 617 A.2d 1235 (App.Div.1992), certif. denied, 134 N.J. 482, 634 A.2d 528 (1993); N.J.R.E. 703. They must also be able to point to a generally accepted, objective standard of practice and "not merely to standards personal to the witness." Fernandez v. Baruch, 52 N.J. 127, 131, 244 A.2d 109 (1968). Otherwise "[a]n opinion lacking in foundation is worthless[,]" State v. One Marlin Rifle, 319 N.J.Super. 359, 370, 725 A.2d 144 (App.Div.1999), and ceases to aid "the trier of fact to understand the evidence or determine a fact in issue." Landrigan, supra, 127 N.J. at 417, 605 A.2d 1079 (quotation omitted).
Here, McGuire's opinion lacked the requisite factual basis. Although he linked the need for on-product labeling to the magnitude and severity of the risk associated with jumping, he never identified any factual or statistical measure defining that risk. He collected no epidemiological data and conducted no empirical research or analysis quantifying the lives lost or injuries sustained in ATV jumping accidents. *793 On the contrary, he relied exclusively on a 1986 CPSC study that did not specifically address jumping, but rather generally concerned ATV accidents involving "tipping and/or turnovers attributed to handling characteristics and vehicle suspension systems." Yet, the expert made no effort to differentiate between accidents involving tipping and those involving jumping. Moreover, McGuire did not identify any governmental or industry standards that were violated by the Honda warnings, and in fact, acknowledged that the warnings provided with the 2001 Honda TRX 400 EX model complied with existing standards. See, e.g., Hull v. Getty Ref. & Mktg. Co., 202 N.J.Super. 461, 466, 495 A.2d 445 (App.Div.1985); Shatz v. TEC Technical Adhesives, 174 N.J.Super. 135, 415 A.2d 1188 (App.Div.1980). Thus, absent such facts, plaintiff's expert lacked a basis for his opinion that the nature of the risk involved necessitated warnings of a type, emphasis or placement different than those Honda already provided.
Similarly lacking any factual foundation is the expert's second reason for opining the warnings inadequate, namely that Honda's promotional marketing sent mixed messages to consumers, resulting in "cognitive dissonance" and failure to heed the warnings Honda actually gave. The motion judge rejected this theory as well, finding:
I understand the concept in the abstract, but in a situation where there's nothing before me to indicate that they have created it through advertising and what have you, and the only thing that [plaintiff] says he relied on was seeing this in . . . one magazine where some reviewer talked about it, . . . I need for this . . . theory to go to a jury, something that . . . from your expert, that . . . makes it clear and consistent with his report that this, as a . . . factor in humanity, requires some additional duty more than what was done.
. . . .

I don't think there's enough in the cognitive dissonance theory to go to a . . . jury under . . . these reports, given the fact that there's nothing before me to show that there's anything active by Honda to promote their idea that their equipment should go up hills and then be airborne.

. . . .
Which is what we have here, we have somebody using a . . . four-to-six-foot hill . . . as a ramp andand I don't think there's anything that I've seen that leads me to conclude that Honda has actively promoted that as a use of its vehicle and that's a far cry, what happened in . . . this accident is a far cry from kids riding . . . an ATV on a farm field where . . . they're enjoying some speed and some freedom.
[(emphasis added).]
Again, we agree with the motion judge.
We recognize, of course, that "counteracting representations" have the capacity to nullify an otherwise suitable warning. 1 Jerry J. Phillips & Robert E. Pryor, Products Liability § 6.07 at 6-46 (2004); see also Levey, supra, 361 N.J.Super. at 319, 825 A.2d 554. In other words, if a product seller or manufacturer promotes, advertises or encourages in any manner or fashion a specific use of a product that it simultaneously warns against, these "representations" may very well "counteract" the effectiveness of the original warning, rendering it null and void. Levey, supra, 361 N.J.Super. at 319, 825 A.2d 554. Such promotional and merchandising practices by the manufacturer, or those acting at his direction, not necessarily limited to words, may "obscure or lessen the cautionary impact of the seller's warnings." M. Stuart Madden, The Enduring *794 Paradox of Products Liability Law Relating to Prescription Pharmaceuticals, 21 Pace L. Rev. 313, 330 (2001).
Illustrative is Evridge v. Am. Honda Motor Co., 685 S.W.2d 632 (Tenn.1985), where the manufacturer's warning against "doubling" on a motor bike was found to be diluted by the very design of the bike, indicating a place for a passenger behind the driver. Id. at 634-36. And a cause of action has been recognized against a manufacturer of a prescription drug, which serves a useful purpose notwithstanding a medically recognizable risk, for over-promotion of the drug that encouraged physicians to ignore otherwise adequate warnings, effectively canceling out and rendering meaningless the printed words on the label. Baldino v. Castagna, 505 Pa. 239, 478 A.2d 807, 810 (1984) (citing Incollingo v. Ewing, 444 Pa. 263, 282 A.2d 206, 220 (1971)); see also Salmon v. Parke Davis & Co., 520 F.2d 1359, 1363-64 (4th Cir.1975). But see Dauphin Deposit Bank & Trust Co. v. Toyota Motor Corp., 408 Pa.Super. 256, 596 A.2d 845 (1991) (the plaintiff was not permitted to recover for alleged product advertising and over-promotion where the danger of drinking and driving was commonly known); Smith v. Anheuser-Busch, Inc., 599 A.2d 320 (R.I.1991) (the plaintiff was unable to identify specific advertising on which he relied, or to show how it could have reasonably affected his conduct).
Here, however, plaintiff's expert points to nothing in Honda's advertisements, publications or promotional literature from which a reasonable trier of fact could find a "counteracting representation" that undermined the effectiveness of the printed and oral warnings against jumping accompanying the product. As for general depictions of ATVs being jumped originating elsewhere in the media, McGuire cites to no industry practice, governmental standard or regulatory rule that would support the imposition of an affirmative duty on Honda to educate the general public to ignore such visual imagery.
Plaintiff's reliance on Levey, supra, is to no avail. There, Yamaha manufactured a jet boat which included warnings not to jump. 361 N.J.Super. at 315-16, 825 A.2d 554. However, as part of its sales promotion, Yamaha sent a district sales representative to demonstrate the jet boats for dealers, and one of the representatives demonstrated the boat by jumping it over rough waterscontrary to the explicit warnings not to do so. Id. at 316, 825 A.2d 554. One of those dealers duplicated the demonstration, including jumping the boat over a wave, for one of its customers. Id. at 316-17, 825 A.2d 554. As a result, the customer was thrown from her seat and sustained personal injuries, and she brought a claim against Yamaha under a theory that Yamaha's actions nullified the warnings included with the product. Ibid. We reversed the trial court's grant of summary judgment to Yamaha, holding that a jury could reasonably find that Yamaha's live demonstration of the use of the jet boat vitiated the effectiveness of its printed warning. Id. at 319-20, 825 A.2d 554.
Unlike Levey, plaintiff's expert here could not show that Honda engaged in any conduct to contradict its warning not to jump the 2001 TRX 400 EX. There is simply no evidence in the record that Honda's action or inaction was contrary to the explicit warnings provided with the 2001 TRX 400 EX not to jump the ATV.
Yet another reason offered by plaintiff's expert for finding the warnings inadequate is because they failed to instruct on the safe parameters for jumping the ATV. Once again, the expert's opinion is based in neither fact nor law. While a product manufacturer has a duty to ensure that its products "are suitably safe when *795 used for their intended or reasonably foreseeable purposes[,]" Soler v. Castmaster, Div. of H.P.M. Corp., 98 N.J. 137, 144-45, 484 A.2d 1225 (1984) (citations omitted), and to provide instructions for use, D'Arienzo v. Clairol, Inc., 125 N.J.Super. 224, 232-33, 310 A.2d 106 (Law Div.1973), we know of no legal duty on the part of a manufacturer to instruct on how to use a product in a manner the manufacturer has expressly warned against. In other words, a manufacturer is not obligated to instruct a user on the very conduct that its warnings seek to prevent. Indeed, not only does plaintiff's expert fail to explain how such internally conflicting warnings would be effective, but reason compels just the opposite conclusion. Such contradictory messages warning, on the one hand, against jumping, and on the other, how to jump safely, form no basis whatsoever from which a trier of fact may reasonably conclude, as incredibly plaintiff's expert did, that adding instructions on jumping would make the product safer.
Thus, each of plaintiff's expert's reasons for his opinion that Honda's warnings were inadequate lacks the requisite factual basis. Absent such proofexpert or otherwisethere is no basis for a jury to reasonably find the warnings inadequate and therefore a jury question was not presented. See Seeley v. Cincinnati Shaper Co., 256 N.J.Super. 1, 17, 19, 606 A.2d 378 (App.Div.), certif. denied, 130 N.J. 598, 617 A.2d 1220 (1992). Accordingly, plaintiff's product liability cause of action against defendant Honda was properly dismissed on summary judgment.

(ii)
Of course, the same reasons for dismissing the product liability claim against Honda pertain as well to the product seller, defendant Cycle World. N.J.S.A. 2A:58C-2(b). Further, the motion judge properly dismissed plaintiff's negligence claim against this defendant as well, finding that liability in this instance can only be determined pursuant to the Product Liability Act, and that negligence is not a basis for liability under the PLA.
The PLA is the exclusive remedy for personal injury claims arising out of product use. Levey, supra, 361 N.J.Super. at 317-18, 825 A.2d 554. Indeed, the PLA "governs `any claim or action . . . for harm caused by a product, irrespective of the theory underlying the claim, except actions for . . . breach of an express warranty.'" Id. at 318, 825 A.2d 554 (alterations in original)(quoting and citing N.J.S.A. 2A:58C-1(b)(3); Tirrell v. Navistar Int'l, Inc., 248 N.J.Super. 390, 398, 591 A.2d 643 (App.Div.), certif. denied, 126 N.J. 390, 599 A.2d 166 (1991)). Thus, the PLA "no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for `harm[,]' [including personal injury,] caused by a defective product" or an inadequate warning. Tirrell, supra, 248 N.J.Super. at 398, 591 A.2d 643. Rather, the exclusive method to prosecute such a claim is under N.J.S.A. 2A:58C-2 by proving that the product was not reasonably fit, suitable or safe for its intended purpose because it either contained a manufacturing defect, failed to contain adequate warnings or instructions, or was designed in a defective manner. N.J.S.A. 2A:58C-2. Further, a product seller, such as Cycle World, could only be liable under N.J.S.A. 2A:58C-9 if it exercised control over the packaging or labeling of the product, knew or should have known of any defect in the product, or itself created the defect that caused the injury in issue. N.J.S.A. 2A:58C-9(d)(1)-(3).
Here, of course, plaintiff's only proof that Cycle World failed to adequately warn its customers against jumping was its expert's *796 opinion, which was properly ruled inadmissible as a net opinion without a factual basis. Without any competent evidence to support a product liability claim, and absent a legal basis for its negligence claim, plaintiff's action against Cycle World was properly dismissed on summary judgment.

(iii)
In light of our resolution of the issues on plaintiff's appeal, we need not address either defendant Honda's contention on its cross-appeal that the motion judge erroneously qualified McGuire as an expert in human factors and warnings, or plaintiff's rebuttal that defendant lacks standing to raise that issue.
Affirmed.
NOTES
[1] Plaintiff also sued defendants Mark Horn and Mark Horn Masonry, owners of the property where the accident occurred, alleging a premises liability claim, but that matter ultimately settled.
[2] In Kemp, the Court stated: "[I]n cases in which the scientific reliability of an expert's opinion is challenged and the court's ruling on admissibility may be dispositive of the merits, the sounder practice is to afford the proponent of the expert's opinion an opportunity to prove its admissibility at a Rule 104 hearing." Id. at 432-33, 809 A.2d 77.