**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3523-14T3

MARGARET BELL,

    Plaintiff-Appellant,

v.

RICHARD C. KLEIN, ESQUIRE,
RICHARD C. KLEIN, P.C., and
SPECTOR, GADON & ROSEN,

    Defendants-Respondents.

_____

Argued December 13, 2016 — Decided  July 11, 2017

Before Judges Messano, Suter and Guadagno.

On appeal from New Jersey Superior Court, Law
Division, Camden County, Docket No. L-3121-
12.

Colleen Flynn Cyphers argued the cause for
appellant (Levin Cyphers, attorneys; Ms.
Cyphers, on the briefs).

Jason S. Feinstein argued the cause for
respondents (Eckert, Seamans, Cherin &
Mellott, L.L.C., attorneys; Mr. Feinstein, of
counsel and on the brief).

PER CURIAM

    Plaintiff Margaret Bell appeals the February 26, 2015 summary

judgment order, which dismissed her claims of legal malpractice

against defendants Richard C. Klein, Esq., Richard C. Klein, P.C. (P.C.), and Spector, Gadon & Rosen (SGR) (collectively, the defendants). We affirm in part, reverse in part and remand.

I.

Bell retained Klein and his P.C. in September 2005 to represent her in a divorce action filed by her husband, Michael Bell (husband). Klein continued to represent Bell after he dissolved his P.C. on December 31, 2005 and became employed by SGR.

Bell and her husband were married for sixteen years. He worked full-time in a family-owned business. She was employed in the last few years of the marriage part-time as a realtor. The divorce involved two parcels of real estate: the marital home in New Jersey and another property solely in Bell's name in Florida. A pendente lite order provided that Bell was to receive unallocated support of $600 per week. Her husband was to pay certain household expenses such as the mortgage, insurance and utilities on the marital home, and Bell's car payment.[1]

The couple was divorced by Dual Final Judgment of Divorce with Stipulations (Final Judgment) on February 26, 2007. The Final Judgment included their settlement agreement, and was signed

_____

[1] This order was not included in the record.

by both parties and their counsel. The parties were both questioned under oath about their willingness to voluntarily enter into the settlement. For her part, Bell acknowledged she was entering into the agreement freely and voluntarily and without coercion.

KLEIN:    Thank you. Now, you understand that this is an agreement that both of you must be bound by and it is going to become an order of the Court, correct.

BELL:     Yes.

KLEIN:    All right, and you certainly intend to be bound by this agreement, correct.

BELL:     Yes, I intend - -

KLEIN:    Okay.

BELL:      - - everything I said here.

          . . . .

KLEIN:    As you sit here today are you under the influence of any substance, medication, that would impair your ability to understand these proceedings?

BELL:     No.

KLEIN:    Okay. And do you understand that [the judge] is making no determination today about the fairness of this agreement or the merits of this agreement, that all she is doing today is taking testimony and making a

3

                    determination that each of you have
                    entered into this freely,
                    voluntarily and willingly, is that
                    correct?

        BELL:       That's correct.

        KLEIN:      Do you understand that?

        BELL:       Yes.

        KLEIN:      Okay.  And you are - - nobody's
                    forcing you or coercing you to enter
                    into this agreement, correct?  You
                    had questions about it, we addressed
                    those questions, correct.

        BELL:       Yes.

        KLEIN:      Okay.

        BELL:       You addressed them.

The trial judge found the parties "entered into the agreement

voluntarily and intended to be fully bound by it."

    The settlement had been achieved two weeks earlier following

a two-day, non-binding arbitration before a retired judge, who was

well-versed in matrimonial law.  Klein had submitted a lengthy

memorandum to the arbitrator in advance that addressed alimony,

real estate, equitable distribution and counsel fees.

    The Final Judgment provided for permanent alimony of $800 per

week.  Bell's husband was required to secure the alimony by

maintaining life insurance with a face amount of $300,000 that

would be reduced by $50,000 every five years.  The Final Judgment

referenced two earlier agreements signed during the marriage. One agreement from 2000 was allegedly drafted by Klein. The second "Indemnification and Hold Harmless Agreement," drafted by another lawyer not involved here, purportedly required Bell's husband to be responsible for past due federal income taxes, and he allegedly waived any rights to equitable distribution or possession of the premises.[2] The Final Judgment provided the indemnification agreements "shall be and are hereby declared unenforceable . . . past, present or future."

The Final Judgment addressed equitable distribution. The Florida home had been sold and a portion of the net proceeds after payment of mortgages, taxes and commissions were placed in escrow. The marital home was in foreclosure, having both a mortgage and home equity line of credit. Under the Final Judgment, Bell could refinance the property or the property would be sold. If sold, paragraph five of the Final Judgment described various deductions and credits from any resulting equity, the net balance of which was to be paid by Bell to her husband. "[U]npaid direct and indirect support" of $17,500 was to be deducted from the net equity.

---

[2] These agreements (the indemnification agreements) are not part of the record on appeal.

The parties were "equally responsible" for federal income taxes under the Final Judgment although Bell's husband agreed to be solely responsible for unpaid New Jersey income taxes. The Final Judgment required each party to maintain life insurance for their child's benefit. Each party was responsible for their attorney's fees. The parties agreed the Final Judgment was "final and binding," entered into "voluntarily" without "force, coercion and/or duress," was a "compromise" of their claims, and was "fair, adequate and satisfactory."

SGR sued Bell in September 2007 for unpaid attorney's fees. Bell filed a counterclaim against SGR and a third-party complaint against Klein and P.C., alleging legal malpractice (the 2007 complaint). The 2007 complaint alleged that Klein, P.C. and SGR deviated from "customary standards and practices of lawyers" by not acting in her best interests; by forcing her under duress to sign the settlement agreement; by not conducting discovery prior to settling the case; by not enforcing the earlier indemnification agreements; by not enforcing the pendente lite support order and by not using monies held in the attorney's escrow to pay her delinquent mortgage and taxes, as Klein allegedly promised.

In March 2010, Bell voluntarily dismissed the 2007 complaint without prejudice. This dismissal did not conform with Rule 4:37-1(a). Bell's counsel explained to the court that as a result of

post-trial motions, specifically one decided on February 19, 2010, which allegedly involved a negative interpretation of the settlement agreement, Bell could not "raise the additional claim of negligence and damages as part of this action" because discovery was closed and thus, needed to dismiss the legal malpractice complaint to assert such claims. Bell then accepted the defendants' $30,000 Offer of Judgment, which dismissed with prejudice the attorney's fee portion of the case. The malpractice claim remained dismissed (voluntarily) without prejudice.

Bell filed another legal malpractice complaint in May 2012 (the 2012 complaint).[3] The 2012 complaint was similar to the 2007 action, naming Klein, his P.C. and SGR as defendants. In the complaint, Bell alleged Klein failed to enforce the pendente lite order for support; did not file motions to amend her visitation rights; improperly distributed monies from the sale of the Florida house to her husband; did not enforce the earlier indemnification agreements; did not pay her mortgage arrears or property taxes as agreed; did not conduct discovery about her husband's income; and presented her with the settlement agreement just before going on the record in court, without the ability to review it, and that

---

[3] In the interim, we decided a post-divorce judgment appeal, where we rejected a request by Bell's ex-husband to reduce or terminate alimony, but we remanded the case for a recalculation of attorney's fees. <u>Bell v. Bell</u>, No. A-4003-10 (App. Div. June 1, 2012).

it included terms with which she did not agree. The 2012 complaint alleged the Final Judgment required her to pay 100% of the equity from the marital home to her husband; 100% of the capital gains tax on the Florida home; and part of the federal income tax arrears. It did not include a clause requiring her husband to pay past due support payments or to pay the mortgage, taxes or utilities on either home. Bell objected to the alimony amount, contending it was based on inaccurate income figures. She also complained about certain allegedly inappropriate comments Klein made to her. The 2012 complaint did not make any reference to post-judgment motions.

Defendants filed a motion to dismiss the 2012 complaint, alleging that because the 2007 complaint had been withdrawn in violation of Rule 4:37-1(a), Bell should not be able to relitigate the same issues. In April 2013, the motion judge denied the motion, but ordered Bell to pay defendants' litigation costs arising from the 2007 complaint in sixty days or the 2012 complaint would be dismissed with prejudice. Bell paid $11,283.20 and the 2012 complaint was reinstated in October 2013.

Bell retained the same individual as an expert witness that she utilized in connection with the 2007 complaint. The October 23, 2014 report of Cary Cheifetz, Esq. (Cheifetz) identified six different "deviations" from "accepted standards of practice" that

constituted legal malpractice by defendants. The first deviation concerned the failure to incorporate into the settlement agreement the indemnification agreements, which allocated tax liabilities in Bell's favor. Klein allegedly did not aggressively seek enforcement of those agreements, which were not "mid-marriage" agreements according to Cheifetz, but enforceable "tax indemnification agreements." Klein allegedly deviated from accepted practice because there was no "downside exposure" to trying to enforce the agreements, and Klein should have sought a compromise or a ruling on their enforceability. Cheifetz opined that Bell's damages constituted one-half the equity in the marital home and the income tax liabilities she had paid.

The second deviation concerned alimony. The "material deviation" was that Klein "used an insufficient income stream for [husband] in calculating the alimony for his client." He should have retained a "forensic accountant and [conducted] discovery," which should have included inquiry into the family-run books and records. Cheifetz asserted that Klein "settled the case far below his client's worst case scenario." Cheifetz opined that Bell was damaged through lost alimony of $35,950 per year. Cheifetz also took issue with the income that had been used for Bell in the alimony calculation.

The third alleged deviation was Klein's failure to collect the pendente lite arrears for the mortgages, taxes and capital gains, which should have been collected at the time of the settlement.

The fourth alleged deviation involved the improper drafting of the settlement agreement, which required "post-judgment litigation as well as the employment of a certified public accountant" to implement the agreement. Cheifetz found paragraph five's formula, which he asserted spawned post-judgment litigation, to be "incomprehensible." Cheifetz alleged the lack of clarity resulted in unspecified damages.

The fifth deviation alleged that Klein had a conflict of interest because of his purported involvement in drafting the 2000 indemnification agreement. Cheifetz opined that had Klein pressed for a trial, he could not have testified because of his conflict. This gave the other side "an unfair negotiation advantage" that damaged Bell.

The sixth deviation addressed miscellaneous issues. Cheifetz alleged there was no need for Bell to have life insurance for her daughter's benefit. He asserted the $300,000 insurance that her husband was required to purchase was not adequate to secure the alimony and the $50,000 stepdown added to the problem. Cheifetz alleged Klein deviated from the standard of care when he

failed to pay Bell's mortgage and taxes as promised. Klein also was alleged to be rude and disrespectful contrary to the Rules of Professional Conduct.

Cheifetz concluded that the "settlement agreement deviate[d] materially from the reasonable expectations that a client would expect to receive if they were represented by competent counsel." He opined the settlement was, "as a whole," plaintiff's "worst case scenario with no consideration for compromise." The "alimony issue" was settled "far below" the worst case. Acceptance of the settlement was "incompetent." He opined that Klein committed legal malpractice by advising his client to settle the case instead of trying it where she would have received more in alimony and equitable distribution. In addition, Cheifetz concluded Bell incurred costs arising post-judgment that she "would not have incurred."[4]

Defendants' summary judgment motion in October 2014 alleged that the 2012 complaint was barred by the entire controversy doctrine and constituted fraud upon the court, because the case had been dismissed with prejudice in 2010, and Bell now was making the same allegations. Defendants alleged that Cheifetz's expert

---

[4] Defendants retained an expert in 2009, whose report is in the record. We do not know if that report was updated for the 2012 litigation.

report offered only inadmissible net opinions. Defendants alleged Bell should be judicially estopped because she agreed to the settlement and now was taking a contrary, inconsistent position; that the claims against the P.C. were time-barred, having been brought more than six years after the P.C. was closed; and that the expert report was defective because it did not allege any damages.

The motion was opposed by Bell, who alleged there were disputed facts. Bell relied on Cheifetz's report about deviations involving "the improper allocation of outstanding income tax liabilities, equity in the former marital residence, the amount of alimony recommended[,] . . . failure to collect pendente lite arrears [and] numerous other issues."

On November 21, 2014, the trial judge granted partial summary judgment under the entire controversy doctrine and dismissed with prejudice "all claims [existing] on or prior to February 26, 2007." For claims after that, the court denied defendants' motion, but invited additional briefing to address whether those claims should be dismissed. Both parties filed supplemental submissions.

Bell filed a motion to reconsider the November 21, 2014 order and extend discovery to serve a supplemental expert report. Discovery was extended, which permitted the service of expert reports.

On February 20, 2015, the trial judge granted Bell's motion for reconsideration, explaining that Bell's claims arising before February 2007 could go forward based upon the prior judge's ruling. However, the judge then granted summary judgment to defendants, finding Bell's claims were judicially estopped, as "[t]he only evidence of any coercion is the plaintiff's own words, some two years after the fact. It is a bootstrap attempt to deny what she said under oath." The judge also found summary judgment was appropriate because Cheifetz's opinion was a net opinion, as he "ha[d] a personal opinion that he could have done better for [plaintiff] if he were the attorney."

Bell appealed the February 26, 2015 order that dismissed her complaint. Defendants have not filed a cross-appeal. As such, there is no appeal of the February 20, 2015 order that granted reconsideration nor of the December 19, 2014 order that allowed Bell to serve a supplemental report by Cheifetz.[5]

On appeal, Bell contends summary judgment was erroneously entered because there was a dispute of fact regarding her state of mind when she was "forced, threatened and coerced" into settling her matrimonial case, because Klein disputes "such threats and allegations of duress." Moreover, Bell contends the trial court

---

[5] A supplemental report was served which addressed the issue of damages.

erred as a matter of law in finding her expert report constituted a net opinion because the report was "replete with sound factual data," was supported by "legal foundation and citations," and explained the legal "deviations from the standard of care." Bell contends that post-judgment litigation regarding the equity from the marital home provided an independent basis to continue this malpractice litigation, despite the dismissal of the earlier litigation, because that issue arose after dismissal of the earlier case.

## II.

We review a trial court's order granting or denying summary judgment under the same standard employed by the trial court. W.J.A. v. D.A., 210 N.J. 229, 237 (2012). The question is whether the evidence, when viewed in a light most favorable to the non-moving party, raises genuinely disputed issues of fact sufficient to warrant resolution by the trier of fact, or whether the evidence is so one-sided that one party must prevail as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Where there are claims of legal malpractice, "summary disposition is appropriate only when there is no genuine dispute of material fact." Ziegelheim v. Apollo, 128 N.J. 250, 261 (1992) (citing Judson v. Peoples Bank & Tr. Co., 17 N.J. 67, 74 (1954)).

14

The trial judge dismissed the malpractice complaint on two grounds, namely that Bell was judicially estopped from raising the claims, and that her expert's report constituted a net opinion. We agree Bell is judicially estopped from raising certain claims, but not others. We do not agree that Bell's expert offered net opinions on the remaining claims.

A.

"Public policy favors the settlement of disputes." Willingboro Mall, Ltd. v. 240/242 Franklin Ave. L.L.C., 215 N.J. 242, 253 (2013). See also Gere v. Louis, 209 N.J. 486, 500 (2012) (noting "New Jersey's strong public policy in favor of the settlement of litigation"). We also acknowledge a "'strong public policy favoring stability of arrangements' in matrimonial matters." Quinn v. Quinn, 225 N.J. 34, 44 (2016) (quoting Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)).

That said, "lawyers owe a duty to their clients to provide their services with reasonable knowledge, skill, and diligence. Ziegelheim, supra, 128 N.J. at 260. Necessary steps in the proper handling of the case "will include, among other things, a careful investigation of the facts of the matter, the formulation of a legal strategy, the filing of appropriate papers, and the maintenance of communication with the client." Id. at 261. "[T]he Court in Ziegelheim concluded that '[t]he fact that a party

received a settlement that was "fair and equitable" does not mean necessarily that the party's attorney was competent or that the party would not have received a more favorable settlement had the party's incompetent attorney been competent.'" Guido v. Duane Morris, L.L.P., 202 N.J. 79, 93 (2010) (alteration in original) (citations omitted). A "lawyer is obligated to give the client reasonable advice." Ziegelheim, supra, 128 N.J. at 261. "[A]ttorneys who pursue reasonable strategies . . . and who render reasonable advice to their clients cannot be held liable for the failure of their strategies or for any unprofitable outcomes . . . ." Id. at 267.

"[T]he existence of a prior settlement is not a bar to the prosecution of a legal malpractice claim arising from such settlement." Guido, supra, 202 N.J. at 94. A narrow equity based exception to this exists "to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment." Ibid. (quoting Knorr v. Smeal, 178 N.J. 169, 178 (2003)) (other citation omitted). The Court applied this exception in Puder v. Buechel, 183 N.J. 428 (2005), where the client's malpractice claim was barred because the "second settlement had the effect of placing [the client] in the situation she contended she should have occupied at the outset." Gere, supra, 209 N.J. at 504. Actions by counsel after settlement may

also form the basis for a legal malpractice action. <u>Ibid.</u> (finding that the malpractice claim was not barred where claims "revolved instead around" attorneys action after the settlement agreement was executed and the agreement reserved the ability to sue former attorney).

Here, the trial judge erred in concluding that all of Bell's claims of legal malpractice were judicially estopped. "Judicial estoppel is an equitable doctrine precluding a party from asserting a position in a case that contradicts or is inconsistent with a position previously asserted by the party in the case or a related legal proceeding." <u>Tamburelli Props. Ass'n v. Borough of Cresskill</u>, 308 <u>N.J. Super.</u> 326, 335 (App. Div. 1998). The doctrine is "meant to protect the integrity of the judicial system, designed to prevent litigants from 'playing fast and loose with the courts.'" <u>Ibid.</u> (quoting <u>Scarano v. Cent. R.R. Co.</u>, 203 <u>F.</u>2d 510, 513 (3d Cir. 1953)).

We have applied the doctrine of judicial estoppel in upholding the dismissal of a legal malpractice action where a client voluntarily agreed to a settlement of the record, and later alleged she was forced to accept this settlement. <u>See</u> <u>Newell v. Hudson</u>, 376 <u>N.J. Super.</u> 29, 46-47 (App. Div. 2005) (although agreeing with the settlement on the record, the client later asserted she was forced to agree to this to obtain a divorce). In <u>Newell</u>, we said

that such "self-serving behavior is precisely the type of inconsistent judicial position-taking that the doctrine of judicial estoppel is designed to prevent." Id. at 47.

Here, the trial court was correct to judicially estop Bell's malpractice claim premised on duress. Bell now alleges she was coerced into the settlement, yet specifically told the court when the settlement was placed on the record that she was not coerced. The settlement document itself stated that it was the final agreement entered into voluntarily. She has offered no proof of coercion. Her self-serving statements alone are insufficient to create a genuine issue of material fact to survive a summary judgment motion. See generally Heyert v. Taddese, 431 N.J. Super. 388 (App. Div. 2013).

Similarly, we agree with the trial judge that judicial estoppel applies to Bell's claim of legal malpractice regarding the incomes used to determine alimony and the alleged lack of discovery regarding that issue. The emails included in the record show that Bell was well aware her husband's income was not fully known prior to the arbitration. The issue was raised by Klein in the arbitration memorandum presented to the arbitrator. Klein provided Bell with the names of two experts, who could perform a forensic accounting, but warned her of the significant costs that such an analysis would entail. Similar to the plaintiff in Newell,

who was aware of a lack of financial information, Bell agreed to the settlement acknowledging that it was fair. Having settled the case with knowledge of the uncertainty about her husband's income, Bell should be estopped from asserting a different position now.

There was no basis, however, to conclude that Bell's legal malpractice claims based on drafting errors in the settlement agreement itself are precluded by judicial estoppel. The agreement appears to require that 100% of the net equity from the marital home was to be paid to her husband, but the arbitrator's notes reflect the net equity should have been divided between the parties. The agreement seemed to reimburse only a portion of the pendente lite arrears although the arbitrator's notes tallied those pendente lite arrears at more than double. Bell could not know when she testified in support of the settlement what problems might arise in the implementation of the settlement based on alleged drafting errors. We are constrained to conclude the judge erred by preventing Bell from raising the alleged drafting errors in the settlement agreement as deviations from the standard of care.

We cannot agree that the other alleged deviations should be judicially estopped by Bell's agreement to the settlement. The record is simply inadequate for us to determine what advice was or was not given to Bell about the indemnification agreements, the

life insurance, the alleged conflict of interest, or the alleged agreement to pay the mortgage and taxes. Therefore, we reverse in part the trial court's order that granted summary judgment and dismissed Bell's complaint in its entirety, and remand for further proceedings consistent with this opinion.

B.

We agree with Bell that the trial judge erred in determining Cheifetz's report constituted a net opinion. We review that determination under an abuse of discretion standard. Riley v. Keenan, 406 N.J. Super. 281, 295 (App. Div.), certif. denied, 200 N.J. 207 (2009).

A trial court must decide "whether [an] expert's opinion is based on facts and data." Rosenberg v. Tavorath, 352 N.J. Super. 385, 401 (App. Div. 2002) (citations omitted). "N.J.R.E. 703 requires that an expert's opinion be based on facts, data, or another expert's opinion, either perceived by or made known to the expert, at or before trial." Ibid. An expert must be able to point to generally accepted objective standards or practices, not merely standards personal to them. Koruba v. A. Honda Motor Co., 396 N.J. Super. 517, 526 (App. Div. 2007), certif. denied, 194 N.J. 272 (2008). "Under the 'net opinion' rule, an opinion lacking in such foundation and consisting of bare conclusions unsupported

by factual evidence is inadmissible." Rosenberg, supra, 352 N.J. at 401 (citations omitted).

Cheifetz opined, based upon case authority, that accepted standards required Klein to recognize the indemnification agreements were enforceable.[6] Klein took the same position in the arbitration memorandum. Having retreated from that position, Cheifetz opined the settlement agreement was below what reasonably could have been expected. Cheifetz quantified the alleged damages attributable to this alleged deviation. We cannot say, therefore, that the opinion was a mere conclusion based on a personal standard. It provided the "why and wherefore" for the conclusion. See State v. One Marlin Rifle, 319 N.J. Super. 359, 370 (App. Div. 1999) ("[T]he net opinion rule requires an expert witness to give the why and wherefore of his expert opinion, not just a mere conclusion.").

On the alleged drafting errors, the standard as alleged by Cheifetz was to draft the document to reflect the parties' agreement. He alleges the document varied from the agreement, causing Bell's equitable distribution to be below what could have been expected and resulting in litigation. This alleged deviation

---

[6] We limit our discussion to the issues that survived judicial estoppel.

was not based on Cheifetz's personal opinion, but again his report provided the foundation for his conclusions.

With respect to the amount of life insurance that Bell's husband was required to maintain, Cheifetz explained that it would not be adequate to secure the alimony. He supported his conclusion with facts, not personal opinion. He explained why Bell should not be required to obtain life insurance because there was no indication the child would be without support in the event of Bell's passing. Therefore, we do not agree with the trial judge that Cheifetz's report constituted impermissible net opinions.[7]

Affirmed in part; reversed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] Bell's reply brief did not contest defendants' claim that Bell could not proceed against P.C. because the statute of limitations had run. "An issue not briefed is deemed waived." W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 459 (App. Div. 2008) (citation omitted). By not opposing the defense, Bell conceded it.