**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0994-24

DEVANG SHAH, in his individual capacity and derivatively on behalf of NUPUR TRADING LLC,

    Plaintiff-Appellant,

v.

NUPUR TRADING LLC, ALKA H. AMIN, HEMANG SURESHBHAI AMIN, RUPAL A. PATEL, ANISH P. PATEL, HAVMOR CORPORATION USA LLC, AARYAN IMPORTS LLC, KRISHNA TRADING, LLC, ARYA TRADING LLC d/b/a DIVYA FOODS, AMIN TRADING AGENCY, LLC d/b/a ANSU FOODS, and AMIN TRADING, LLC,

    Defendants-Respondents.

_____

Argued April 22, 2026 – Decided May 28, 2026

Before Judges Mayer, Paganelli and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000052-21.

Paul I. Perkins (The Perkins Firm, LLC) argued the cause for appellant.

Michael J. Lauricella argued the cause for respondents Hemang Sureshbhai Amin, Havmor Corporation USA, LLC, Aaryan Imports, LLC, Amin Trading Agency, LLC, and Amin Trading, LLC (Archer & Greiner, PC, attorneys; Michael J. Lauricella and Alexis M. Way, on the brief).

Douglas J. Kinz argued the cause for respondents Alka H. Amin, Rupal A. Patel, and Anish P. Patel.

Joseph H. Tringali argued the cause for respondent Arya Trading, LLC (Bendit Weinstock, PA, attorneys; Joseph H. Tringali, on the brief).

PER CURIAM

Plaintiff Devang Shah appeals from a December 18, 2023 order barring his expert report and precluding his expert's testimony at trial, denying his motion to file and serve a supplemental expert report authored by a different expert, and allowing defendants to file a motion for attorney's fees. He also appeals from an April 2, 2024 order awarding attorney's fees and costs to defendants per the December 18, 2023 order and a separate April 2, 2024 order granting summary judgment to defendants and dismissing his claims with prejudice. We affirm in part and reverse in part.

2

A-0994-24

Plaintiff held a minority stake in defendant Nupur Trading, LLC (Nupur). Defendants Alka H. Amin, Rupal A. Patel, and Anish P. Patel[1] owned a majority stake in Nupur. Defendant Hemang Sureshbhai Amin is married to Alka.

Nupur was established in June 2012. It imported groceries and other products from India and elsewhere for resale to retailers, wholesalers, and distributors.

Prior to December 1, 2015, Alka was the sole member of Nupur. On November 30, 2015, Alka executed a general power of attorney granting Hemang authority to act on behalf of Nupur (Power of Attorney). The Power of Attorney authorized Hemang to conduct business transactions related to Nupur and on behalf of Alka. The Power of Attorney expressly stated: "[A]ll the acts done by Hemang will be bound to Alka." The Power of Attorney authorized Hemang "to perform in Alka's name and on behalf of [her] to sign any legal documents mentioned [in the Power of Attorney]." Additionally, the Power of Attorney stated Hemang "accept[ed] th[e] appointment subject to its term[s] and agree[d] to act and perform in the said fiduciary capacity consistent with Alka's

---

[1] Because several defendants share the same last name, we refer to them by their first name. No disrespect is intended.

A-0994-24

best interest as he [sic] best decision deems and affirm and ratify all acts so undertaken."

On December 1, 2015, plaintiff, Rupal, and Anish became members of Nupur. As of December 1, 2015, plaintiff held a 33.33% interest in Nupur. Alka held a 33.34% interest in Nupur. Rupal, Alka's sister, held a 17% interest in Nupur. Anish, Rupal's husband and Hemang's brother-in-law, held a 16% interest in Nupur. Hemang held no interest in Nupur.[2] The addition of these members required creation of a revised operating agreement (Operating Agreement) for Nupur. All parties executed the Operating Agreement, including Hemang who signed the document on behalf of Alka pursuant to the Power of Attorney.

The Operating Agreement included non-compete and duty of loyalty provisions. According to plaintiff's complaint, Hemang exploited his position with Nupur—including knowledge and skills acquired through his unrestricted access to Nupur's "confidential and proprietary information by virtue of the Power of Attorney"—to form competing limited liability companies for the purpose of importing the same or similar products in direct competition with Nupur.

---

[2] Nupur was dissolved in December 2022.

A-0994-24

In May 2017, Hemang formed defendant Havmor Corporation USA, LLC (Havmor) which imported, sold, retailed, and distributed Indian groceries and other food products. Havmor allegedly sold imported goods to Nupur's existing and prospective customers. In November 2018, Hemang formed defendant Aaryan Imports, LLC (Aaryan) and allegedly engaged in the same activities as Havmor. Plaintiff alleged these competitors caused Nupur to lose business from existing customers and brands with which Nupur had negotiated international sales agreements.

In January 2021, Hemang resigned from Nupur. Within forty-eight hours of resigning, Hemang formed defendants Amin Trading Agency, LLC d/b/a Ansu Foods (Ansu Foods) and Amin Trading, LLC (Amin Trading), which were in the same business as Nupur. A few days later, Hemang acquired a 38,000-square-foot warehouse in New Jersey to house Amin Trading and Ansu Foods. Shortly thereafter, plaintiff alleged Ansu Foods and Amin Trading engaged in business with Nupur's existing and prospective customers in violation of the non-compete provision in the Operating Agreement. Plaintiff alleged Hemang diverted a shipment of products—procured by Nupur and slated for delivery to Nupur's warehouse—to his new warehouse. Hemang allegedly sold those Nupur products to his own customers. Plaintiff claimed he was denied access to

5

Nupur's books and records, including documents related to the importing of goods, after he discovered Hemang's diversion of products.

In April 2021, plaintiff sued defendants. In the complaint, he requested dissolution of Nupur. He claimed defendants misappropriated business opportunities, engaged in unjust competition, violated the Operating Agreement's good faith and fair dealing provision, breached their fiduciary duties and duties of loyalty, interfered with contractual relations and prospective business, and committed acts constituting fraud, unjust enrichment, and conversion. Alka, Rupal, and Anish (Member Defendants) filed an answer, crossclaim, and counterclaim. Defendants Hemang, Aaryan, Ansu Foods, and Amin Trading (Amin Defendants) filed a separate answer.

During discovery, plaintiff named Dharmendra Jain as his accounting expert. The day before the discovery end date, Jain authored a July 30, 2023 report (Jain Report) in support of plaintiff's claims, addressing liability and damages. Defendants subsequently deposed Jain.

After the close of discovery, defendants moved to bar the Jain Report and Jain's testimony at trial. Defendants also sought an award of attorney's fees and

6

costs.[3]  Plaintiff opposed the motions.  Despite the close of discovery, plaintiff moved to replace Jain with a new expert, Joseph Petrucelli, a certified public accountant, and to permit the service of a "supplemental" expert report authored by Petrucelli.

In a December 18, 2023 order with an attached statement of reasons, the judge granted defendants' motion to bar the Jain Report and to preclude Jain's trial testimony.  The judge also denied plaintiff's motion to replace Jain with a new expert and serve a "supplemental" report.  The judge's order also allowed defendants to submit certifications in support of their request for attorney's fees and cost.

The judge found plaintiff requested multiple extensions of discovery and had ample opportunity to obtain a "supplemental" expert report before the close of the lengthy discovery period.  The judge cited a July 7, 2023 order expressly stating discovery closed on July 31, 2023, and there would be "no further extensions absent exigent or unforeseen circumstances."

The judge barred the Jain Report and Jain's testimony because the report and testimony "entirely employed . . . an unreliable methodology."  The judge

---

[3] Nothing in the appellate record indicated defendants served a Rule 1:4-8 letter or made any other demand for plaintiff to withdraw the Jain Report.

A-0994-24

noted Jain's inability to explain during his deposition "what methodologies were used and how he got to the conclusions" in his report. The judge further cited Jain's deposition testimony acknowledging Jain was not a licensed accountant. Based on these findings, the judge concluded Jain could not proffer an expert opinion within a reasonable degree of accounting certainty.

Additionally, the judge found Jain lacked the necessary qualifications to provide expert accounting testimony. In his merits brief, plaintiff concedes "[i]t [i]s clear that Mr. Jain's opinion . . . amount[ed] to a 'net opinion' and, as such, [wa]s unhelpful."

Based on Jain's "firmly demonstrated and undeniable lack of qualifications, coupled with the unsupportable, inexcusable 'net opinion' of a report he submitted," the judge explained defendants would have avoided unnecessary litigation expenses if plaintiff had not retained Jain as an expert. The judge stated defendants' motions for summary judgment were adjourned multiple times at plaintiff's request, causing defendants to face trial delays and incur significant litigation costs and legal fees. Based on these findings, without citation to any court rule, statute, or contract provision, the judge allowed defendants' attorneys to file certifications in support of their applications for fees and costs.

8

In rejecting plaintiff's motion to replace Jain with a new expert and to serve a "supplemental" expert report, the judge explained a firm trial date had been twice set and plaintiff failed to articulate exceptional circumstances supporting a further discovery extension. The judge also cited prior case management orders imposing specific litigation deadlines, including a deadline for the submission of expert reports. Only after recognizing Jain was unqualified to render an expert opinion did plaintiff seek to name Petrucelli as his new expert. In a certification in support of plaintiff's motion, Jain stated he failed to set aside the necessary time to prepare a timely expert report, suffered "personal issues" impacting his ability to concentrate, and was unable to continue as plaintiff's expert.

According to Petrucelli's certification in support of plaintiff's motion, he required additional time to prepare a new expert report. He further certified he was unable to rely on the documents previously requested during discovery to prepare his report. The judge found Petrucelli's requests would "essentially reopen discovery."

The judge concluded plaintiff "should have put time into researching and vetting his expert before arguing, and certifying, that . . . Jain was qualified." Further, the judge found replacing Jain with Petrucelli would necessitate "an

9

entirely new report that would burden the [d]efendants to have to conduct yet another deposition and review further reports."

In denying plaintiff's motion, the judge explained:

> It [wa]s now crystal clear . . . Jain was neither qualified to speak with authority on the subject at issue . . . and [he] . . . lacked qualifications as an expert; nor was his methodology sound and supported by "good grounds" or generally accepted accounting principles as applied in such instances here in the United States, therefore rendering his otherwise "net" opinions unreliable; nor was there any relevant connection between the damage calculation results to be presented and the particular disputed factual issues in this case.

The judge found Jain "woefully failed the qualifications, reliability, and fitness tests prescribed in Daubert[4] and adopted by our Supreme Court in In re[] Accutane"[5] to permit the Jain Report and Jain's testimony at trial. Regarding plaintiff's motion for a replacement expert, after considering the circumstances and procedural history of the litigation, the judge found "no just cause or exceptional circumstances" to grant the motion. The judge determined the "manifest prejudice" to defendants "at this late stage and procedural posture

---

[4] Daubert v. Merrill Dow Pharms. Inc., 509 U.S. 579 (1993).

[5] In re Accutane, 234 N.J. 340 (2018).

A-0994-24

of the matter far outweigh[ed] that which ha[d] been effectively self-inflicted by the [p]laintiff."

The judge also denied plaintiff's request to be permitted to offer lay opinion testimony supporting his purported damages, particularly lost profits. The judge referenced plaintiff's prior certifications in which plaintiff stated he was not an accountant or a financial specialist. Additionally, the judge found plaintiff never provided any evidence supporting his claimed damages or how he calculated those damages. The judge rejected plaintiff's belated effort to adopt Petrucelli's opinions as his own non-expert, lay witness testimony on the eve of trial.

In allowing defendants to file certifications in support of their attorney's fees, the judge limited the period for recovery to fees from the September 19, 2023 case management order extending discovery to the December 18, 2023 order barring the Jain Report and Jain's testimony. After reviewing defendants' certifications in support of attorneys' fees and costs, the judge granted $38,859.50 to the Member Defendants; $38,826.05 to the Amin Defendants, and $14,208.52 to Krishna and Arya Trading. In a written statement of reasons, the judge analyzed defendants' requested fees and costs consistent with the requirements of Rule 4:42-9 and the Rules of Professional Conduct.

11

On appeal, plaintiff argues the judge erred in denying his request to testify as to damages. Because the judge did not allow him to testify as a damages lay witness, plaintiff contends the judge should have allowed Petrucelli to replace Jain as his trial expert. Further, plaintiff asserts he presented sufficient liability evidence to defeat defendants' motions for summary judgment. He also argues the award of attorney's fees and costs was not warranted. We reject plaintiff's arguments with the exception of his challenge to the award of attorney's fees and costs.

We first address plaintiff's arguments the judge erred in granting summary judgment after barring Jain's testimony and the Jain Report as net opinion, denying plaintiff's request to allow Petrucelli to replace Jain as his trial expert, and precluding plaintiff's ability to testify as to damages. We reject these arguments.

We review an order granting summary judgment de novo. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). A genuine issue of material fact exists

A-0994-24

where "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015). Our Supreme Court "reaffirm[ed] that the abuse of discretion standard must be applied by an appellate court assessing whether a trial court properly admitted or excluded expert . . . testimony in a civil case." Accutane, 234 N.J. at 348. Under this standard, a trial judge's ruling will be reversed "only if it was so wide off the mark that a manifest denial of justice resulted." Rodriguez v. Wal-Mart Stores, Inc., 237 N.J. 36, 57 (2019) (quoting Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016)) (Internal quotation marks omitted).

Expert testimony is required where the average juror "would not be expected to have sufficient knowledge or experience and would have to speculate without the aid of expert testimony." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001) (citing Kelly v. Berlin, 300 N.J. Super. 256, 268 (App. Div. 1997)). An expert's testimony is governed by N.J.R.E. 702. In determining whether expert testimony is admissible, the evidence rule

A-0994-24

provides: "(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise." Townsend, 221 N.J. at 53 (quoting Creanga v. Jardal, 185 N.J. 345, 355 (2005)).

Our Supreme Court has recognized that "[t]he net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (second alteration and omission in original) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)). "An expert is required to give the 'why and wherefore' of his or her opinion, not just a mere conclusion or speculation." Riley v. Keenan, 406 N.J. Super. 281, 295 (App. Div. 2009) (quoting Koruba v. Am. Honda Motor Co., 396 N.J. Super. 517, 525-26 (App. Div. 2007)). "To support a causal connection between the act complained of and the resulting injury or damage, experts must be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are scientifically reliable." Ibid. (quoting Koruba, 396 N.J. Super. at 526).

N.J.R.E. 701, governing opinion testimony of lay witnesses, provides:

A-0994-24

If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it:

(a) is rationally based on the witness' perception; and

(b) will assist in understanding the witness' testimony or in determining a fact in issue.

Pursuant to N.J.R.E. 701, "[a] party to an action with expertise gained through . . . personal experience may express an opinion of the sort ordinarily provided by an expert." E & H Steel Corp. v. PSEG Fossil, LLC, 455 N.J. Super. 12, 27 (App. Div. 2018) (quoting Cast Art Indus., LLC v. KPMG LLP, 416 N.J. Super. 76, 100 (App. Div. 2010)).

"'Lost profits' signifies the difference between gross income and the costs or expenses which had to be expended to produce the income." Cromartie v. Carteret Sav. & Loan, 277 N.J. Super. 88, 103 (App. Div. 1994). "To recover lost profits, a party must show that profits were lost as a result of the actionable conduct complained of." Ibid.

Lost profits may be recoverable if they can be established with a "reasonable degree of certainty." Stanley Co. of Am. v. Hercules Powder Co., 16 N.J. 295, 314 (1954) (quoting Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 144 (1950)). Anticipated profits that are too remote, uncertain, or speculative are not recoverable. Ibid.; see also V.A.L. Floors, Inc. v.

15

Westminster Cmtys., Inc., 355 N.J. Super. 416, 426 (App. Div. 2002). "Proof of damages need not be done with exactitude," therefore it is "sufficient that the [party] prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate." Totaro, Duffy, Cannova and Co., LLC v. Lane, Middleton & Co., LLC, 191 N.J. 1, 14 (2007) (quoting Lane v. Oil Delivery Inc., 216 N.J. Super. 413, 420 (App. Div. 1987)). However, "it is well-settled that the law 'abhors damages based on mere speculation.'" Mosley v. Femina Fashions, Inc., 356 N.J. Super. 118, 128 (App. Div. 2002) (quoting Caldwell v. Haynes, 136 N.J. 422, 436 (1994)).

Having reviewed the record, we are satisfied the judge properly granted summary judgment to defendants after concluding the Jain Report and Jain's testimony amounted to impermissible net opinion. Additionally, the judge correctly concluded plaintiff's testimony as a lay witness was not competent to establish lost profits because plaintiff admitted he was "not an accountant or a financial person." Nor did the judge err in declining to allow the filing of a late "supplemental" report prepared by Petrucelli.

Petrucelli explained that "[i]n order to calculate damages in a case that involve[d] the shifting of sales[,] a review of profitability and value would have

16

to be performed as of the date closest to the apparent breach of fiduciary responsibilities, which i[n] this case [wa]s January 7, 2021." Nothing in the record demonstrates plaintiff has the qualifications or ability to perform the type of complex analysis identified by Petrucelli to calculate damages. Nor is there any evidence plaintiff is able to proffer the necessary accounting testimony for the jury to assess the validity of plaintiff's damage calculations. Further, plaintiff never provided calculations to support his alleged damages. Even if plaintiff had done so, he never articulated his methodology for such calculations.

Additionally, plaintiff's proposed lay opinion testimony was based on inadmissible hearsay. Plaintiff conceded he was "not an accountant or financial person." Only after the judge barred the Jain Report and Jain's trial testimony did plaintiff submit a January 12, 2024 certification contending that, "after . . . consultation with many experts," he "believed [he was] able to prove damages" through his own testimony without the need for any expert testimony. Plaintiff stated his damages testimony would be based on theories developed with Petrucelli's help. On these facts, any lay testimony offered by plaintiff was impermissible because such testimony would have been based on hearsay information obtained after plaintiff consulted with various accounting experts who were not testifying at trial.

17

A-0994-24

We next consider plaintiff's argument the judge erred in denying his motion to allow Petrucelli to submit a "supplemental" expert report. We generally defer to a trial court's decision not to extend discovery unless the trial court has "abused its discretion or if its determination is based on a mistaken understanding of the applicable law." Castello v. Wohler, 446 N.J. Super. 1, 24 (App. Div. 2016) (quoting Rivers v. LCS P'ship., 378 N.J. Super. 68, 80 (App. Div. 2005)). An abuse of discretion occurs when a decision is "made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." Ibid. (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Rule 4:24-1(c) states: "No extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown." "The exceptional circumstances standard of Rule 4:24-1 is designed to deal with the problems created when requests for discovery are presented out of time, creating the possibility of delay." Rivers, 378 N.J. Super. at 80. A "much more substantial showing is required to justify an extension of discovery once a case has been scheduled for arbitration or trial." Montiel v. Ingersoll, 347 N.J. Super. 246, 249 (Law Div. 2004).

To demonstrate "exceptional circumstances," a movant must explain:

(1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.

[Rivers, 378 N.J. Super. at 79.]

Late expert reports and attempts to extend discovery for submission of expert reports may be barred absent exceptional circumstances. Id. at 80-81.

Here, plaintiff failed to demonstrate exceptional circumstances warranting replacement of his original expert witness and allowing a "supplemental" expert report after the discovery closed and two trial dates were scheduled. Plaintiff's belated realization that Jain was unqualified as an expert and the Jain Report amounted to a "net opinion" was not an unforeseen or exigent circumstance justifying the reopening of discovery and permitting a new expert report.

Plaintiff overlooks the fact he waited over two years to retain an expert. Plaintiff had ample opportunity to obtain an experienced accounting expert who could calculate lost profits and testify at trial.

Additionally, Petrucelli's proposed report would have constituted "an entirely new report" which the judge found would burden defendants on the eve

19

of trial. Petrucelli's certification in support of plaintiff's motion to reopen discovery and allow a new expert report confirmed Petrucelli planned to proffer wholly new damages calculations based on methodologies and theories different than those in the Jain Report.

Further, we agree with the judge that allowing plaintiff to replace his expert and to submit a "supplemental" expert report long after the close of discovery, which judge extended multiple times, and two trial dates would create a substantial hardship on defendants. If the court allowed Petrucelli to replace Jain, defendants would necessarily incur additional expenses. Defendants would need to evaluate the new report, file a rebuttal report, depose Petrucelli, and potentially file motions related to Petrucelli's opinions and testimony. Under these circumstances, the judge did not abuse his discretion in denying plaintiff's motion to reopen discovery and allow a replacement expert.

We next consider plaintiff's argument the judge erred in granting summary judgment to defendants because there were disputed issues of material fact. We disagree.

We previously cited Rule 4:46-2(c) governing summary judgment determinations. A court should deny summary judgment if there is conflicting evidence and there are disputed material facts such that a rational factfinder

20

could find in favor of the non-movant. Mangual v. Berezinsky, 428 N.J. Super. 299, 308-09 (App. Div. 2012). "If there is the slightest doubt as to the existence of a material issue of fact, the motion should be denied." Saldana v. DiMedio, 275 N.J. Super. 488, 494 (App. Div. 1994).

However, a motion for summary judgment will not be defeated by conclusions lacking factual support, Petersen v. Township of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011), self-serving statements, Heyert v. Taddese, 431 N.J. Super. 388, 414 (App. Div. 2013), or disputed facts "of an insubstantial nature." Brill, 142 N.J. at 529 (quoting Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 75 (1954)). Competent evidence to defeat summary judgment requires evidence "beyond mere 'speculation' and 'fanciful arguments.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Hoffman v. Asseenontv.com, Inc., 404 N.J. Super. 415, 425-26 (App. Div. 2009)). Parties opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Triffin v. Am. Int'l Grp., Inc., 372 N.J. Super. 517, 523-24 (App. Div. 2004) (quoting Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3rd Cir. 1992)).

In granting summary judgment to defendants, the judge explained:

21

After a viewing of the [p]laintiff's pleadings, deposition transcripts, answers to interrogatories, together with the affidavits, certifications and exhibits presented in the motion record, in the [c]ourt's view, there [wa]s no genuine issue as to any material fact that would enable or entitle the [p]laintiff to withstand the entry of summary judgment against him. Based on the record, the [d]efendants [we]re absolutely entitled to summary judgment. The [p]laintiff [wa]s unable to prove damages without an expert, and ha[d] failed to even present an amount or how such damages would or could be calculated <u>even if</u> his claims could be supported by his "lay" opinion – that is, if the [c]ourt also believed there to be viable causes of action on which any of the [d]efendants could be held liable.

As to the issue of damages, upon viewing the competent evidential materials presented in the motion record, as the [c]ourt [wa]s required to do, in a light most favorable to the non-moving party – the [p]laintiff – and after according all legitimate inferences that could be drawn therefrom in his favor, the evidence [wa]s not sufficient and instead woefully inadequate to permit a rational factfinder to resolve the alleged dispute as to damages in the favor of the [p]laintiff. Indeed, the evidence presented [wa]s "so one-sided" that the [d]efendants must prevail as a matter of law. There [wa]s no genuine issue that exists to require this matter to be subjected to a trial on the issue of damages. In fact, the [p]laintiff ha[d] failed to show and [could not] show the nature, extent, components, acceptable calculation methodology(ies) and/or actual quantum of the damages that he [sought] against the [d]efendants.

Further, the motion record fail[ed] to reveal any sustainable legal basis on which any of the moving [d]efendants could be held liable under the causes of action asserted. Among other deficiencies, without

22

limitation, it ha[d] been conceded that two of the four counts alleged against the Krishna/Arya Trading [d]efendants are – as they ha[d] been – rendered non-actionable by reason of the waiver and dismissal provisions contained in the Nupur [d]issolution [a]greement. Nor can the [c]ourt glean from the motion record any basis for certain other claims levelled against the Member Defendants and the Amin Defendants. Stated differently, there [wa]s no evidence of tortious interference, breach of contract, or unjust enrichment, and the [p]laintiff could not and did not provide any . . . [T]he [p]laintiff failed to satisfy all required elements for such claims.

Put simply, even assuming, <u>arguendo</u> – but rejecting outright – there was . . . any sustainable bases for the imposition of liability against any of the moving [d]efendants in this matter such that a trial [wa]s necessary to resolve them, the simple fact of the matter [wa]s that the [p]laintiff ha[d] not even calculated what the amount of his alleged damages [we]re, ha[d] not disclosed how or by what methodology he would compute them from the documentary evidence exchanged in discovery, the defense remain[ed] in the dark to the very day of oral argument on these motions as to what that amount [wa]s and/or what their relative exposures [we]re; and thus, the [p]laintiff [could not] even establish a prima facie case of damages, much less <u>prove</u> a case for damages. As in any civil matter such as this, without a showing of liability <u>and</u> damages, the [p]laintiff's [c]omplaint should and must fail as a matter of law. Bluntly stated, its "evisceration" here [wa]s self-executing.

A plaintiff must "prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to

23

make a fair and reasonable estimate." Lane, 216 N.J. Super. at 420. "Damage awards may not be based on mere speculation." Kelly, 300 N.J. Super. at 268. "[A] jury should not be allowed to speculate without the aid of expert testimony in an area where laypersons could not be expected to have sufficient knowledge or experience." Ibid. (quoting Biunno, Current N.J. Rules of Evidence, cmt. 2 on N.J.R.E. 702 (1996-97)). It is well-settled that expert testimony is required when the issue is beyond the "common knowledge of lay persons." Froom v. Perel, 377 N.J. Super. 298, 318 (App. Div. 2005) (quoting Kelly, 300 N.J. Super. at 265-66).

Here, the causation and damage issues are particularly complicated. A determination regarding plaintiff's claims involves specialized knowledge of complex accounting principles, such as lost profits, costs associated with doing business and generating sales, and, potentially, valuation of goodwill and trademarks. Because these concepts are beyond the ken of the average juror, expert testimony is required to establish causation, prove plaintiff suffered damages, and calculate alleged damages. Without expert testimony, the average juror would impermissibly be required to speculate on damages without the requisite level of knowledge, skill, and experience to render a decision.

A-0994-24

We also reject plaintiff's assertion there are genuine issues of material fact precluding summary judgment. Plaintiff failed to submit admissible evidence creating a genuine dispute as to any issue of material fact. In the absence of expert testimony, plaintiff cites his own self-serving certification to claim the existence of genuine issues of material fact requiring reversal of summary judgment.

Well-settled case law requires expert testimony to prove damages in this case. Even if we agreed expert testimony was not required for plaintiff to pursue his claims, which we do not, plaintiff's discovery responses failed to specify his damages with particularity, failed to state the amount of his alleged damages, and failed to provide the necessary calculations to support those damages. Because plaintiff failed to establish damages, there were no materially disputed facts, and the judge properly granted summary judgment to defendants.

We turn to plaintiff's claim the judge erred in awarding attorney's fees and costs to defendants. We agree.

We review an award of attorney's fees and costs for abuse of discretion. Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 443-44 (2001). Having reviewed the record, we are satisfied the judge misapplied his discretion in awarding fees and costs to defendants.

A-0994-24

To be entitled to an award of attorney's fees and costs, there must be a basis for awarding such expenses under a court rule, statute, or written contract. "New Jersey has a strong public policy against the shifting of costs and . . . has embraced that policy by adopting the 'American Rule,' which prohibits recovery of counsel fees by the prevailing party against the losing party." In re Est. of Vayda, 184 N.J. 115, 120 (2005) (quoting In re Niles, 176 N.J. 202, 293-94 (2003)) (internal quotation marks omitted). Therefore, a "party may not be granted attorney's fees unless authorized by the parties' contract, court rule, or statute." Rock Work, Inc. v. Pulaski Const. Co., 396 N.J. Super. 344, 350-51 (App. Div. 2007).

Here, defendants cited no contract, court rule, or statute supporting their request for attorney's fees and costs to the motion judge or to this court. Rather, defendants relied on the equitable powers of the Chancery judge for the awarded fees.

However, the judge did not indicate his award of fees and costs was premised upon his equitable powers. Nor did the judge refer to any contract, court rule, or statute supporting the awarded $91,894.07 sum. Although we appreciate the judge's careful analysis of defendants' certifications in support of the awarded fees and costs, the judge needed to state the legal bases for such an

A-0994-24

award.  Absent any articulated legal authority, there was no basis for awarding attorney's fees and costs.  Therefore, the judge abused his discretion in awarding fees and costs to defendants.

We next review plaintiff's argument the judge erred in granting summary judgment to defendants Krishna Trading and Arya Trading on plaintiff's unjust enrichment and conversion claims.  Plaintiff claims he presented "relevant and substantial evidence that the [d]efendants Divya and Krishna owe money to Nupur" and that "[d]efendants Hemang, Anish, Alka and Rupal did not want to collect on this money" because they "are related by blood to the principals of Divya and Krishna."  Plaintiff claims he is entitled to recover damages under theories of unjust enrichment and conversion because Arya Trading and Krishna Trading owed money to Nupur and plaintiff sought to recover those funds derivatively on Nupur's behalf.

In granting summary judgment on plaintiff's unjust enrichment and conversion claims, the judge explained:

> [T]he motion record fail[ed] to reveal any sustainable
> legal basis on which any of the moving [d]efendants
> could be held liable under the causes of action asserted.
> Among other deficiencies, without limitation, it ha[d]
> been conceded that two of the four counts alleged
> against the Krishna/Arya Trading Defendants [we]re –
> as they ha[d] been – rendered non-actionable by reason
> of the waiver and dismissal provisions contained in the

27

Nupur [d]issolution [a]greement. Nor c[ould] the [c]ourt glean from the motion record any basis for certain other claims levelled against the Member Defendants and the Amin Defendants. Stated differently, there [wa]s no evidence of tortious interference, breach of contract, or unjust enrichment, and the [p]laintiff could not and did not provide any.

"To demonstrate unjust enrichment, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust' and that the plaintiff 'expected remuneration' and the failure to give remuneration unjustly enriched the defendant." EnviroFinance Grp., LLC v. Env't Barrier Co., 440 N.J. Super. 325, 350 (App. Div. 2015) (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)).

The judge properly dismissed the unjust enrichment claim because the dissolution agreement, executed when Nupur ceased operations, provided for the dismissal of all claims "asserted on behalf of Nupur only" upon the filing of a statement of dissolution and termination with the State. Nupur filed a certificate of dissolution and termination on or about December 13, 2022.

Even if the unjust enrichment claim had not been released pursuant to the dissolution agreement, plaintiff's unjust enrichment claim was asserted as derivative claim on behalf of Nupur, not as an individual claim on behalf of plaintiff. Nupur's dissolution agreement provided for the waiver and dismissal

28

of any claim arising at the time Nupur conducted business.  Therefore, the judge properly granted summary judgment on this claim.

The judge also correctly concluded plaintiff's claim for conversion could not survive summary judgment.  "Conversion has been defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'"  LaPlace v. Briere, 404 N.J. Super. 585, 595 (App. Div. 2009) (quoting Barco Auto Leasing Corp. v. Holt, 228 N.J. Super. 77, 83 (App. Div. 1988)).  It "is an intentional tort in that the defendant must have intended 'to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'"  Ibid. (quoting Prosser and Keeton on Torts § 15, at 92 (5th ed. 1984)).  "However, the defendant need not knowingly or intentionally act wrongfully for a conversion to occur."  Ibid.  "Conversion is 'the wrongful exercise of dominion and control over property owned by another inconsistent with the owners' rights.'"  Ibid. (quoting Sun Coast Merch. Corp. v. Myron Corp., 393 N.J. Super. 55, 84 (App. Div. 2007)).

In support of his conversion claim, plaintiff relies on the same arguments as his unjust enrichment claim.  He contends summary judgment was improper because Arya Trading and Krishna Trading owed money to Nupur and plaintiff

sought to collect those funds derivatively on Nupur's behalf. We are satisfied the judge properly dismissed the conversion claim for the same reasons supporting dismissal of the unjust enrichment claim.

To the extent we have not addressed any of plaintiff's remaining arguments, those arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed as to the April 2, 2024 order awarding attorney's fees and costs to defendants. Affirmed as to all other orders on appeal.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0994-24